IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., a Florida corporation,

Plaintiff,

v.

MT. HAWLEY INSURANCE COMPANY, an Illinois corporation,

Defendant.

No. C 17-04952 WHA

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this action for insurance declaratory relief, the question is whether or not a subcontractor's insurer must defend a suit against the general contractor arising out of an accident at the worksite where the subcontractor was performing its work for the general contractor. This order holds that the subcontractor's insurer violated its duty to defend the general contractor.

## STATEMENT

Plaintiff Associated Industries Insurance Company, Inc., and defendant Mt. Hawley Insurance Company are both issuers of commercial general-liability insurance. Associated issued a policy to Imac Construction, Inc., effective February 12, 2013 to February 12, 2014. In 2013, Imac contracted to build structural concrete on "The View," an affordable-housing construction project in Downey, California. On May 21, 2013, before beginning work on The

View, Imac hired J. Ginger Masonry, LP, as a subcontractor for "Masonry and Masonry Reinforcement" work. Imac also hired Hof & Yates Rebar as a subcontractor for "Rebar Supply and Installation" work.

Section 3 of the subcontract agreement between Imac and J. Ginger required in relevant part that J. Ginger carry general-liability insurance with a one million dollar limit per "occurrence" and a provision or endorsement naming Imac "as an additional insured as respects liabilities arising out of [J. Ginger's] performance of the work under this contract, and providing that such insurance is primary insurance as respects the interests of [Imac] and that any other insurance maintained by [Imac] is excess and not contributing insurance with the insurance required hereunder" (*see* Dkt. No. 14-1 at 5). Section 16 further provided that J. Ginger would indemnify and hold Imac harmless "from any and all claims, demands, liabilities, judgments liens, encumbrances, costs and expenses . . . arising out of or in connection with the obligations herein made and undertaken by [J. Ginger], or the operations and work conducted by [J. Ginger]." J. Ginger would *not*, however, provide indemnity "against liability or loss caused by the sole negligence or sole willful misconduct of [Imac]" (*id.* at 9).

Pursuant to Section 3 of the subcontract agreement, J. Ginger obtained a policy from Mt. Hawley effective July 23, 2013, to July 23, 2014. Section I(1) of the coverage form stated Mt. Hawley "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and "will have the right and duty to defend the insured against any 'suit' seeking those damages" (Dkt. No. 14-2 at 42). The scope of commercial general-liability coverage under the policy was modified by "Form C," an endorsement that listed as additional insured "[a]ll persons or organizations where required by written contract." Coverage extended to such additional insured under Form C only with respect to liability arising out of work and operations performed by J. Ginger or on its behalf, as well as the materials, parts, or equipment furnished in connection with such work or operations (*see id.* at 58, 72). Form C also provided, "To the extent required under contract, this policy will apply as primary insurance to additional insureds . . . and other insurance which may be available to such additional insureds will be non-contributory" (*id.* at 72).

2

The scope of commercial general-liability coverage under the policy was also modified by "Form B," a narrower endorsement that listed as additional insured "any person or organization for whom [J. Ginger is] performing operations when [J. Ginger] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [J. Ginger's] policy." Form B provided in part (*id.* at 78):

> Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. [J. Ginger's] acts or omissions; or
>
> 2. The acts or omissions of those acting on [J. Ginger's] behalf;
>
> in the performance of [J. Ginger's] "ongoing operations" for the additional insured.

The key distinction between Form C and Form B for our purposes, as discussed further below in the context of the parties' arguments, is that Form C generally covered liability *arising out of* work and operations performed by J. Ginger or on its behalf whereas Form B covered only liability *caused by* acts or omissions performed by J. Ginger or on its behalf.

Section IV(4) of the coverage form stated the insurance provided by Mt. Hawley would be primary unless it was "excess over," among other things, "[a]ny other primary insurance available to [J. Ginger] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [J. Ginger has] been added as an additional insured by attachment of an endorsement" (*id.* at 53). If the insurance provided by Mt. Hawley was "excess," then Mt. Hawley would have "no duty . . . to defend [J. Ginger] against any 'suit' if any other insurer has a duty to defend [J. Ginger] against that 'suit'" (*ibid.*). The foregoing provision, however, was amended by another endorsement, which added language that stated, "This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis that is available to [J. Ginger] as an additional insured or contractual indemnitee under a policy issued to a subcontractor" (*id.* at 84).

By October 2013, construction work to build The View was underway. On October 23, Jose Barazza, a J. Ginger employee, was building a block wall at the same time that an unnamed

3

Imac employee was using a forklift to move a rebar cage onto a dowel near said wall, with two Hof & Yates employees walking alongside to help position the cage. The cage slipped off the forklift, hit the wall, and fell onto Barazza, injuring him. In March 2014, Barazza and his wife sued both Imac and Hof & Yates for negligence, premises liability, and loss of consortium.

Imac tendered the *Barazza* complaint to both Associated and Mt. Hawley. Associated accepted tender and defended Imac throughout the litigation. Mt. Hawley, however, declined. On January 6, 2016, RLI Insurance Services, the claim administrator for Mt. Hawley, wrote a letter to Imac's attorney explaining Mt. Hawley's decision. That letter quoted Form C and stated (*see id.* at 23–24):

> The plaintiff, an employee of our named insured, is alleging that without warning employees of IMAC and their Sub-Contractor miss-handled [*sic*] a large re-bar structure causing it to fall off of a fork lift and onto his head and back where he was working some distance away on a concrete block wall. He has made no allegations regarding the conduct of his employer and he is barred by law from suing him.
>
> Investigation and discovery of this matter to date show that your client did not conduct any safety meeting that morning and did not document it a saftey [*sic*] meeting. It also shows that your job supervisor was warned that the job site was too congested to move this structure at that time and that a crane rather than a fork lift was required to handle it. It also shows that our insured employee and plaintiff had been working in the area for over 45 minutes in plain sight when the accident occurred and that no one asked him, warned him or told him to leave.
>
> In summary there is no evidence at all to date other than your cross complaint and tenders that this accident arose out of or was related to anything our client was doing on the job site at the time of the accident.

Thus, while Mt. Hawley did not dispute that Imac qualified as an additional insured under J. Ginger's policy, it refused to defend or indemnify Imac in the *Barazza* litigation.

On August 1, 2017, counsel for Associated responded to RLI's letter, challenging Mt. Hawley's disclaimer and asking it to reconsider its position. In the same letter, counsel for Associated also asserted that Mt. Hawley's coverage is primary to and non-contributory with Associated's, and asked Mt. Hawley to reimburse Associated's defense costs and to contribute towards settlement (*id.* at 27–29). Mt. Hawley never responded in writing (*id.* at 2). It is unclear whether Mt. Hawley ever responded orally. This action followed.

4

Based on the foregoing undisputed facts, Associated moves for summary judgment that (1) Mt. Hawley owed a duty to defend Imac, and (2) Mt. Hawley's coverage was primary and Associated's coverage was excess. This order follows full briefing and oral argument.

**ANALYSIS**

**1. LEGAL STANDARDS.**

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. A genuine dispute of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A court deciding a motion for summary judgment must accept the non-movant's evidence and draw all justifiable inferences in their favor. *Id.* at 255. "The mere existence of a scintilla of evidence" or "some metaphysical doubt as to the material facts" in the non-movant's favor, however, will not suffice. *Id.* at 252, 261 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

Both sides agree that California law governs interpretation of the documents at issue in this action (*see, e.g.*, Dkt. Nos. 14 at 8, 21 at 9–10).

**2. WHETHER MT. HAWLEY OWED A DUTY TO DEFEND.**

Associated's theory is that Barazza's lawsuit exposed Imac to liability "arising out of" J. Ginger's subcontracting work because Barazza suffered his injury while working on The View. Thus, according to Associated, Mt. Hawley had a duty to defend Imac under Form C of J. Ginger's insurance policy. Mt. Hawley responds that there must be some stronger connection between J. Ginger's subcontracting work and Barazza's injury to trigger coverage under either Form B or Form C. As Associated points out, Imac tendered the *Barazza* complaint to Mt. Hawley pursuant to Form C, so Form B is irrelevant. Mt. Hawley, however, repeatedly references the narrower language of Form B in its opposition in an attempt to force a comparison between our case and inapposite case law, as explained below. (To repeat, Form C generally covered liability *arising out of* work and operations performed by J. Ginger or on its

behalf whereas Form B covered only liability *caused by* acts or omissions performed by J. Ginger or on its behalf.)

Associated's main authority is *Acceptance Insurance Company v. Syufy Enterprises*, 69 Cal. App. 4th 321 (1999). In *Syufy*, a contractor's employee was injured while climbing through a hatch on the roof of a building. The employee sued the building owner who had negligently maintained the hatch. The parties disputed whether or not the building owner had insurance coverage under an endorsement to the contractor's commercial general-liability policy that made the building owner an additional insured "only with respect to liability arising out of" the contractor's work for the owner. 69 Cal. App. 4th at 323–24. The policy issuer argued that "arising out of" implied a causal connection between the work and the injury. *Id.* at 327. The *Syufy* court disagreed, noting that "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." The *Syufy* court concluded the employee's injury "clearly 'arose out of' the work he was performing on the roof" because "[t]he relationship between the defective hatch and the job was more than incidental, in that [the employee] could not have done the job without passing through the hatch. The fact that the defect was attributable to [the building owner's] negligence is irrelevant." *Id.* at 328–29.

Mt. Hawley responds that *Syufy* is distinguishable because the accident in that case "was causally related to the named insured's performance of its work under the subject contract" (Dkt. No. 21 at 11–12). Specifically, Mt. Hawley points out that the employee in *Syufy* was injured *as a result of* climbing through the hatch as part of his job. Here, in contrast, Barazza was not injured *as a result of* his work on the block wall but simply happened to be standing in the wrong place at the wrong time when the rebar cage fell. This, according to Mt. Hawley, amounts to no more than "mere presence at a jobsite," which does not qualify as an "arising out of" relationship between the liability and work in question.

6

Mt. Hawley's insistence on a "causally related" requirement cannot be squared with the plain holding of *Syufy* that the terms "arising out of" or "arising from" in insurance provisions "does not import any particular standard of causation or theory of liability" but merely "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *See* 69 Cal. App. 4th at 328–39. Moreover, Mt. Hawley is incorrect in characterizing Barazza's presence at the blocker wall as "mere presence at a jobsite." Just as the employee in *Syufy* could not have performed the work called for in that case without climbing through the hatch, Barazza could not have performed J. Ginger's subcontracting work of building the blocker wall without being near the wall. Under *Syufy*, this relationship between Barazza's injury and his work for J. Ginger on The View was "more than incidental" such that the former arose out of the latter. This suffices to trigger coverage under J. Ginger's insurance policy regardless of the fact that Imac, like the building owner in *Syufy*, allegedly bore responsibility for the negligence that caused the injury.

Mt. Hawley contends our case is closer to *St. Paul Fire and Marine Insurance Company v. American Dynasty Surplus Lines Insurance Company*, 101 Cal. App. 4th 1038 (2002), and *Advent, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, 6 Cal. App. 5th 443 (2016). In *American Dynasty*, a contractor was pressure-testing a pipe when the pipe exploded, injuring a subcontractor's employee who just happened to be in the area doing work unrelated to the pipe testing. The employee sued the contractor. The contractor and its insurer then sued the subcontractor and its insurer to recover costs expended defending and settling the employee's lawsuit, based on the subcontractor's agreement to indemnify the contractor for liability arising from any act or omission of the subcontractor. The parties stipulated that the pipe testing and explosion had nothing to do with the work called for in the subcontract, but the trial court nevertheless entered judgment for the contractor. 101 Cal. App. 4th at 1045–47.

The California court of appeal reversed, holding that the subcontractor's duty to indemnify was never triggered because the liability in question did not arise from any act or omission of the subcontractor during the performance of its subcontracting work. *American Dynasty* specifically distinguished *Syufy* on two grounds. *First*, the employee in *Syufy* could

7

not have done the work covered by the policy without passing through the hatch where he was injured. *Syufy* thus involved more than "the employee's mere incidental presence in a 'zone of danger' that had been created entirely by the actions of the general contractor and had *nothing* to do with the work called for in the subcontract." *Id.* at 1051–52. *Second*, the contract language in *American Dynasty* expressly limited indemnification to liability arising from an "*act or omission*" by the subcontractor "*during the performance of the work called for by the Subcontract*," and clearly no such act or omission had occurred. *Id.* at 1052–53.

Neither distinction is present here. Barazza, unlike the employee in *American Dynasty*, was not merely incidentally present in a "zone of danger" that had nothing to do with the work called for in his employer's subcontract. Rather, he was injured in the worksite for The View while standing near a wall that he was working on for J. Ginger as part of the latter's subcontracting work on The View. Indeed, in *American Dynasty* the parties actually *stipulated* that the pipe testing and explosion had nothing to do with the subcontracting work. No such stipulation exists here. Moreover, Form C does *not* contain the limiting "act or omission" language that proved dispositive in *American Dynasty*. Instead, like the policy in *Syufy*, Form C provides coverage for all liability "arising out of" the subcontracting work at issue. Mt. Hawley repeatedly argues that Imac's liability did not arise out of any "act or omission" of J. Ginger, in an apparent attempt to draw a parallel to the language in *American Dynasty*, but that language simply does not appear in Form C (*see, e.g.*, Dkt. No. 21 at 13–15).

Mt. Hawley's reliance on *Advent* turns on similar sleight of hand. In *Advent*, a subcontractor's employee was injured when he fell down a stairwell. He could not remember how he fell, but he was outside the subcontractor's work area and not doing subcontracting work at the time. The employee sued the general contractor, who then sued the subcontractor's insurer for declaratory judgment that the contractor was an additional insured under the subcontractor's policy. 6 Cal. App. 5th at 449, 451. The policy in question extended coverage only with respect to injuries caused by the subcontractor's acts or omissions. The *Advent* court, however, found no evidence of such causation in that case. *Id.* at 458–60. It therefore followed

*American Dynasty* in holding that the employee's mere presence at the jobsite was not sufficient to find that the accident was *caused* by the subcontractor's "acts or omissions." *Id.* at 461–62.

Here, Barazza was inside the subcontracting worksite and performing the subcontracting work covered by Mt. Hawley's insurance policy at the time of his injury. This is unlike the "mere presence at the jobsite" that featured in *Advent*. Moreover, as stated, Form C — the endorsement at issue here — does not contain any language limiting coverage to liability caused by J. Ginger's "acts or omissions." *Advent*, like *American Dynasty*, is thus inapposite, and *Syufy* remains the best authority on point. This order agrees with Associated that, under *Syufy*, Barazza's injury arose out of J. Ginger's subcontracting work on The View such that Imac was covered as an additional insured pursuant to Form C of Mt. Hawley's insurance policy. Associated is entitled to summary judgment on this issue.

### 3. WHETHER MT. HAWLEY'S COVERAGE WAS PRIMARY.

Since both Associated and Mt. Hawley's policies cover Imac for the *Barazza* lawsuit, this order must also determine which coverage is primary and which is excess. Associated contends Mt. Hawley's policy is primary insurance because (1) Form C expressly stated that policy would "apply as primary insurance to additional insureds," (2) Section 3 of J. Ginger's subcontracting agreement shows that Imac had to be included in Mt. Hawley's policy specifically for the purpose of protecting Imac from liability arising out of J. Ginger's work on The View, and (3) Section 16 of J. Ginger's subcontracting agreement shows that J. Ginger agreed to indemnify Imac. Associated's third argument is unpersuasive on this record because, under Section 16, J. Ginger has no duty to indemnify against liability or loss caused by Imac's sole negligence (*see* Dkt. No. 14-1 at 9). Associated's first argument, however, is well-grounded in the plain text of Form C itself. Associated's second argument is not as strong because it relies on Section 3 of the subcontracting agreement, not Mt. Hawley's insurance policy, but Section 3 does weigh in Associated's favor insofar as it shows that J. Ginger obtained the policy specifically as primary insurance with respect to Imac for J. Ginger's subcontracting work on The View (*see* Dkt. No. 14-1 at 5).

1  To be clear, the subcontracting agreement between J. Ginger and Imac existed separate
2  and apart from the additional-insured endorsement between Mt. Hawley and Imac. Mt. Hawley
3  overreaches in arguing that the "sole negligence" exception in Section 16 of the former also
4  precludes coverage for Imac as an additional insured under Form C of the latter (*see* Dkt. No.
5  21 at 17). Specifically, Mt. Hawley contends the primary-insurance provision in Form C cannot
6  be enforced because it would (1) violate Section 2782(a) of the California Civil Code, (2)
7  negate the purpose of the indemnity agreement between J. Ginger and Imac, and (3) Form C
8  would not cover Imac for its own negligence. Mt. Hawley's first two arguments have already
9  been squarely rejected by a California appellate court. *See Am. Cas. Co. of Reading, PA v. Gen.*
10 *Star Indem. Co.*, 125 Cal. App. 4th 1510, 1524–25 (2005) (Section 2782 will not invalidate
11 additional-insured endorsement merely because additional insured may have incurred liability
12 due to "sole negligence"); *id.* at 1527–30 (additional-insured endorsement remains enforceable
13 against insurer even where insured owes no duty to indemnify pursuant to a separate indemnity
14 agreement). Moreover, as explained, Section 3 of the subcontracting agreement actually weighs
15 in Associated's favor on this issue even if we were to look to that agreement in applying the
16 additional-insured endorsement in Form C of Mt. Hawley's insurance policy. Mt. Hawley's
17 third argument is essentially a bald assertion that contradicts the plain language of Form C and
18 the holding of *Syufy*, and is rejected for the reasons stated above.

19 In short, the plain language of the additional-insured endorsement in Form C of Mt.
20 Hawley's insurance policy specifies that it applies as primary insurance to Imac for liability
21 arising out of J. Ginger's work for Imac on The View. The indemnity clause in the underlying
22 subcontracting agreement between J. Ginger and Imac does not compel a contrary conclusion.
23 Moreover, even insofar as the subcontracting agreement sheds light on the order-of-coverage
24 issue, it weighs in Associated's favor because Section 3 shows that J. Ginger obtained insurance
25 from Mt. Hawley specifically to provide primary insurance to Imac in connection with J.
26 Ginger's work on The View. Associated is also entitled to summary judgment on this issue.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED**. As explained, with respect to the *Barazza* litigation, this order holds:

1. Mt. Hawley owed a duty to defend Imac as an additional insured on J. Ginger's general-liability policy; and

2. Imac's additional-insured coverage through Mt. Hawley is primary to its named-insured coverage through Associated.

Judgment will follow.

**IT IS SO ORDERED.**

Dated: February 27, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE